UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Nathan Marquis LeBaron,               )
           Plaintiff,                 )        Civil Action Number:
                                      )
     v.                               )
                                      )
Meal Mart®, Meal Mart Owners,         )
Unknown Meal Mart Employees,          )
Luis S. Spencer, Joan T. Kennedy,     )
Katherine A. Chmiel, Thomas E.        )        _____
Dickhaut, Michael Thompson,           )
Christopher Mitchell, and             )
Judge Richard G. Stearns,             )        JURY TRIAL DEMANDED
           Defendants.                )

COMPLAINT

JURISDICTION & VENUE

This action is brought to obtain redress for the deprivation
of federally protected rights and counts pendant pursuant to
federal pendant jurisdiction, and especially rights pursuant
to RLUIPA 1st Amendment Free Exercise of Religion. This action
is more particularly brought in order to obtain an emergency
restraining order and preliminary injunction to immediately stop
the ongoing violations of kosher food as to the practice of Messianic
Judaism, and to facilitate the reasonable needs of Messianic
Judaism. Plaintiff seeks declaratory relief as to Judge Stearns.

1.   This Court has subject matter jurisdiction pursuant
to 28 U.S.C. § 1331, because this case arises under the
Constitution and the laws of the United States.

2.    This Court has subject matter jurisdiction pursuant
to 28 U.S.C. § 1343, because this action seeks to redress damages
for violation of 42 U.S.C. §§ 1983, 1985, and 1986.

3.   This Court has jurisdiction to grant the declaratory
relief Plaintiff seeks pursuant to 28 U.S.C. §§ 2201 and 2202.

4.   Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. §§ 2283 and 2284, as well as Fed.R.Civ.P., Rule 65.

5.   This Court has supplementary jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

6.   Venue in this action is properly situated in the United States District Court for the Eastern District of Massachusetts, First Circuit, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this complaint occurred here and the defendants all reside here.

## PLAINTIFF

7.   Plaintiff Nathan Marquis LeBaron resides in Massachusetts and is a citizen of the United States, at all times mentioned herein as "Plaintiff," and is a prisoner of the Commonwealth of Massachusetts in the custody of the Department of Corrections, currently housed at Souza-Baranowski Correctional Center (SBCC).

## DEFENDANTS

8.   Defendant Meal Mart® is a corporate entity as a business currently dealing with the DOC Commissioner to provide some putative kosher food for DOC religious diets. Meal Mart® Owners and Unknown Employees are responsible for producing putative kosher food.

9.   Defendant Luis S. Spencer is the Commissioner of Corrections assigned by the Governor to run the DOC.

10.   Defendant Joan T.Kennedy is a DOC attorney representing Commissioner Spencer and DOC employees.

11.   Katherine A. Chmiel, Thomas E. Dickhaut, Michael Thompson, and Christopher Mitchell, Defendants, were the recent Religious Services Review Committee of the DOC which convened on 4/10/2012.

12.   The Honorable Judge Richard G. Stearns is the federal judge who recently acted outside of his judgeship to illegally dismiss a lawsuit Plaintiff had filed to protect his rights, which effected a denial of Due Process pertaining to RLUIPA freedoms.

## NATURE OF THIS CASE

13.   The series of events and facts upon which Plaintiff's lawsuit is based revolve around the ongoing denial of simple RLUIPA freedom to practice Messianic Judaism in prison. Plaintiff simply wishes to live a kosher life according to his own religious beliefs and not those of others and to have the same rights others already enjoy.

## FACTS

14.   Twelve inmates in the DOC filled out Inmate Religious Services Request Forms which were reviewed by Defendeants Chmiel, Dickhaut, Thompson, and Mitchell who convened on 4/10/2012 as the Religious Services Review Committee (hereafter referred to as "RSRC"), regarding RLUIPA free exercise of Messianic Judaism.

15.   Plaintiff's request that the DOC hire a Messianic Judaism DOC Chaplain was denied for the reason that Chaplains are hired based on the needs of the inmate population.

16.   The request for daily access to corporate worship space from 8 AM to 8 PM and group study was denied for the reason that there is no Messianic Judaism faith group volunteer yet and the DOC does not permit inmates to lead other inmates in religious worship, see Inmate Management, 103 DOC 400.06.

17.   The request for storage space for corporate worship items was deferred by the RSRC to be considered when a permanent

volunteer for the Messianic Judaism faith group has been secured.

18.    The request for books and tapes and DVDs regarding Messianic Judaism was deferred by the RSRC to be considered once a permanent Messianic Judaism volunteer has been secured and may be purchased through the Inmate Benefit Fund.

19.    The RSRC decided that as to the request for books, tapes, and DVDs, in the interim until a Messianic volunteer is located, the RSRC will consult with the Manager of Library Services to request that books be made available in the institutional libraries regarding Messianic Judaism.

20.    The decision of the RSRC that books be made available in the institutional libraries regarding Messianic Judaism constitutes a denial of Plaintiff's request that "We need all the right books and materials to study in one place--Messianic synagogue."

21.    The RSRC did not answer Plaintiff's request "that the Holy Zohar be removed from the law library and placed in the synagogue. And that the Bible concordances and other references go to the synagogue."

22.    The RSRC denied Plaintiff's specific request "that Deacon Dave Isabel be appointed as our Chaplain until we get a permanent Chaplain or Messianic Minister."

23.    The RSRC ruled that the Catholic Chaplain cannot undertake supervision of the Messianic Judaism group because he already functions on a full time basis as a Catholic Chaplain.

24.    Plaintiff's and others' request for the DOC to provide a "new Messianic kosher menu different from Orthodox Jews was denied for the reason that "The DOC cannot create customized

kosher meals."

25.   The RSRC did not respond to the request of Plaintiff
and others that the kosher menu be followed.

26.   The RSRC denied Plaintiff's and others' "complaints
as to various meals" on the basis that "Mr. LeBaron already receives
the nutritious kosher diet in appropriate quantities."

27.   The RSRC did not respond to Plaintiff's and others'
additional request that the "kosher menu be followed strictly!
Very few exceptions/penalty clause."

28.   Orthodox Jewish rabbis and people are loved and greatly
appreciated by Messianic Judaism Believers, and are needed.

29.   Meal Mart® Defendant Jews are disgracing their own
people by the putative kosher food products they are kosher
certifying, when judged by the Messianic Judaism standards set
by Yeshua HaMashiach.

30.   God called His Chosen People to bless the world. There
is a promise in Scripture at Genesis 22:18 which Meal Mart Defendants
are **very** well aware of to wit: "All the nations of the earth
will bless themselves by your offspring."

31.   There are Orthodox Jewish people in prison on the kosher
diet being cursed by the Meal Mart Defendants' evil putative
kosher food, who are totally disgusted with Meal Mart Defendants
and are deeply wounded and hurt and betrayed by them.

32.   Meal Mart Defendants are cursing the prisoners by the
false kosher food they are putting under their kosher certification.

33.   Some Orthodox Jews are giving up on keeping kosher
because the Meal Mart food is so very horrible.

-5-

34.  Meal Mart is kosher certifying their ghastly, vomitous, and repugnant products for prisoners because they know that most prisoners on the kosher diet are not observant Orthodox Jews at all in the first place.

35.  Meal Mart Defendants resent the prisoners who disgrace the God of Judaism by claiming to be Jewish, and they retaliate against this disgrace by kosher certifying the ghastly, vomitious, and repugnant so-called food substances that they themselves would never want to eat.

36.  The self-righteous Meal Mart Defendants hold the belief that no real observant Jews would end up in prison, and they disregard the real Orthodox Jews who are in prison in order to punish those prisoners they feel are a disgrace to Judaism.

37.  Meal Mart Defendants are approving prisoners' food with their kosher certification and they approve it for prisoners food they do not sell to the general public.

38.  Meal Mart could not market food that they approve for prisoners, because people would not buy it.

39.  Messianic Judaism Believers have a high standard to love the prisoner as a law: "Remember those who are in prison as if you were their fellow prisoner, and those who are ill-treated as if you yourselves were suffering," from Hebrews 13:3.

40.  The Meal Mart Defendants are not observing the Hebrews 13:3 mandate.

41.  The Meal Mart Defendants are not observing the Leviticus 19:18 mandate: "You shall love your fellow as yourself."

42.  Messianic Judaism Believers love Orthodox Jewish rabbis

-6-

and also people, but this love is not mutual. Orthodox rabbis teach that just as Hitler attempted to physically annihilate the Jewish people, Messianic Judaism poses the threat of spiritual annihilation and extermination of the Jewish people.

43.  Messianic Judaism Believers respect Jews as being God's Chosen People who have gifts and a calling that come from God Himself and will never be revoked, See Romans 11:29.

44.  Messianic Judaism Believers hold  that many Gentile people are attracted to Judaism because they are in reality descended from the Lost Tribes of Israel. For this reason, all must observe  all of the laws of God as commanded. This is the One Law theology that contradicts the Orthodox rabbinical teaching that Gentiles need only concern themselves with the "Noahide Laws."

45.  For the most part, American grocery stores are filled with kosher food having been kosher certified by Orthodox Jews.

46.  America eats kosher as to very many food products in any given grocery store across the United States of America.

47.  America was founded on the "Judea-Christian Ethic."

48.  Messianic Judaism Believers hold that they are adopted as literal Children of God, See John 1:12; Romans 8:14-23; Galatians 4:5-6; Hebrews 2:10-11; Hebrews 12:7-10; 1 John 3:1-3.

49.  Messianic Judaism Believers hold that their physical bodies are the literal temple of God and must be treated as such, See 1 Corinthians 3:16-17; 6:19-20; 2 Corinthians 6:14-18; John 2:21.

50.  Messianic Judaism Believers are against some of the food products the Orthodox Jews are kosher certifying, such as powder juices with man-made substances and chemicals, with man-made junk.

51.  Messianic Believers are against processed foods and hold that natural organic foods were intended by God, such as fresh vegetables and fruits, and believe food for a Child of God must be aesthetically pleasing.

52.  Eating is a spiritual ritual and requires honor for a Child of God. Punishment food is not kosher to a Messianic Child of God, even if nutritious.

53.  A Messianic Believer must not only not commit adultery, he must not even lust in his heart; not only is murder prohibited, he must not hate and must not speak lashon hara, See Matthew 5:21-28. In the same way, food must not only be kosher and have nutritional value, it must not be a punishment to experience the eating of it.

54.  Plaintiff and some others have filed Inmate Religious Services Request Forms to the RSRC and have painstakingly outlined some of the most salient things wrong with the current Orthodox Jewish kosher menu, according to the Messianic Judaism laws of God. The RSRC did not enforce the kosher menu, nor did they allow for any positive changes as requested.

55.  After an exhaustive list of things that are wrong with the current Orthodox Jewish kosher menu, Plaintiff and others stated: "For the foregoing reasons, and a plethora of reasons too exhaustive to list here, there needs to be a separate Messianic menu for Messianic Judaism Believers." Then a list of various technical differences between Messianic Judaism and Orthodox Judaism was provided for the RSRC.

56.  Plaintiff and others made a request to the RSRC for a

Messianic Kosher kitchen, with an outline of specific requests
to implement such a kitchen, and the request was both ignored
and denied by the RSRC.

57.  Plaintiff believes the RSRC has made some decisions based
on some foundational misunderstandings of the Messianic Judaism
religion itself. For example, any Christian sect is a sect of
Messianic Judaism, in that we are all believers in the Messiah
of the Jewish religion.

58.  In order to resolve doctrinal differences between all
the Christian sects which are all really Jewish sects, it will
be necessary to study with other Messianic Believers to sort out
the doctrinal issues by looking at the Scriptures together.

59.  The goal of Messianic Judaism is to gather and unite
with all Christian or Messianic sects in a return to the Jewish
roots of the Faith, by application of the standards set by the
Jewish Messiah in the Jewish Scriptures.

60.  The RSRC decision has totally foreclosed the possibility
of other denominations volunteering to help serve the needs of
the growing Messianic Judaism community in prison.

61.  There are many potential volunteers in many different
sects of Christianity who would not discriminate and would be
willing to facilitate Messianic Judaism Bible studies.

62.  Jehovah's Witnesses are a Messianic Judaism  sect notorious
for volunteering to study the Scriptures with people, and there
are many other willing people from other sects.

63.  The recent RSRC decision on 4/13/2012 approved by DOC
Commissioner Spencer has effected an artificial sectarian division.

64.   The whole point of Messianic Judaism is to unite the
Christian denominations by being non-denominational, and so the
whole Catholic/Protestant division of the Body of Messiah is
not a Messianic Judaism belief but is being imposed by the DOC
Defendants herein.

65.   All Messianic Judaism Believers are commanded to love
the brother, including Christian denominations of all kinds,
whether or not we love the brother's doctrine.

66.   There is a need for a Messianic Judaism synagogue on
a daily basis as a religious school for realistic rehabilitation
of prisoners to take place.

67.   Messianic Judaism Believers take rehabilitation and
discipleship very seriously and wish to work every day in the
synagogue as if in school.

68.   Messianic Believers are commanded to make disciples
and to teach them the Ten Commandments and other commandments
in order to support their rehabilitation by daily study and prayer.
This is extremely hard work in prison, and some believe this
work is totally impossible.

69.   Protestant services at SBCC have averaged only several
inmates over the past several years.

70.   The DOC cannot justify the current employment of the
SBCC Protestant Chaplain and the Orthodox Jewish rabbi if the
same criteria is applied as was used by the RSRC to deny hiring
a Messianic Judaism DOC employees, to wit: "...as Chaplains are
hired based on the needs of the inmate population."

71.   Protestant services and the Orthodox Jewish rabbi

currently have fewer active practitioners than Messianic Judaism
to justify their jobs according to the RSRC criteria applied
to Plaintiff's request for paid Messianic DOC staff, and thus
the RSRC decision unjustly discriminates against Messianic Judaism.

72.  Application of the Inmate Management 103 DOC 400.06
violates RLUIPA, given the command of the Messiah to make more
disciples and to teach them to obey the Commandments of God.

73.  Given the current availability of correctional staff
and cameras, 103 DOC 400.06 should be changed to allow inmates
to meet and conduct prayer and Bible study in a neutral setting
in the synagogue space, the same as going to the gym, weight
room, or yard, which are monitored by correctional staff by
cameras for safety. The policy is vague as to the word "worship."

74.  The case law in the First Circuit currently allows
inmates to preach to other inmates, which is an act of  worship.

75.  There are current programs, such as Toast Masters, which
allow inmate supervision, inmates supervising inmates teaching.

76.  Despite repeated violent outbreaks in the gym,  yard,
and weight room, and law library, these prison functions always
resume, and the risks associated are the norm.

77.  There have been very few outbreaks of violence in the
chapel even in the past several decades, and almost none in the
past decade.

78.  Prayer and Bible study in a prison synagogue is a low
risk of violent outbreaks. 400.06 is unconstitutionally vague.

79.  Having a separate Messianic kosher menu would not mean
it would be a customized menu.

-11-

80.  By definition, a customized menu is one that is altered to individual or personal specifications.

81.  Everyone on a Messianic kosher diet, if approved in the future, would be receiving the same food on the same menu, as with any specified prison diet that is universal, and thus such a Messianic Judaism diet would not be considered a customized menu.

82.  By Messianic Judaism standards, the Meal Mart kosher meals being served in prison are not actually kosher at all, but are a punishment diet against the commands of the Messiah.

83.  Orthodox Jews positively hate Messianic Judaism.

84.  It is a conflict of interest to have Orthodox Jews determining what Messianic Judaism adherents eat.

85.  The standards set by the Messiah Yeshua are much higher than the standards set by the Meal Mart Defendants for kosher food, and the treatment of prisoners at to religious kosher diets.

86.  The Meal Mart Defendants are not currently loving their own Orthodox Jewish prisoners as themselves as to the kosher food, which is a violation of the command to love their fellow Yid as they love themselves, See Leviticus 19:18.

87.  There is no way to trust Meal Mart to provide decent kosher food to prisoners as the Messiah and Leviticus 19:18 both require, when the Meal Mart Defendants don't even love their own people as they love themselves.

88.  It is necessary for Messianic Judaism Believers to assume responsibility for their own kosher food at each individual prison kitchen by learning and implementing the kosher laws.

89.  Plaintiff needs to be in a single cell, as he is not compatible to constant disruptions from others during Hebrew Prayers. Plaintiff is being retaliated against by putting people in his cell who are particularly incompatible, such as a Wiccan, and those who like to have mostly nude women on the walls and to practice lust and masturbation. Single cell is mandatory.

90.  Messianic Believers should be allowed in the kitchen to produce food according to kosher laws, who are first certified by Messianic Judaism kosher curriculum, and using much of the same food used to prepare the non-kosher diets.

91.  The preparation processes are the main cause of rendering food in prison not kosher.

92.  Kosher food can be produced in the prison system at reduced costs with minimal effort by little training at any prison.

93.  A daily Messianic Judaism synagogue can easily be set up by the existing Protestant and Catholic DOC Chaplains to assist in getting the needed books and materials.

94.  The DOC Orthodox rabbi could meet certain needs of Messianic Judaism and provide materials that the average Protestant or Catholic Chaplain are not accustomed to providing.

95.  The DOC Orthodox Jewish chaplain rabbi would very likely decline to assist Messianic Judaism Believers in any way, due to extreme beliefs against Messianic Judaism held by the rabbi.

96.  The Christian denominations have lost some Biblical truths that Orthodox Jews still retain, and that is why Messianic Judaism needs the Orthodox Jews.

97.  The Meal Mart Orthodox Jewish Defendants are refusing

to allow Plaintiff and other Messianic Judaism Believers to bless themselves through them as Abraham's offspring as God said pursuant to Genesis 22:18.

98. Plaintiff has previously filed a federal complaint which included a description of some of the things wrong with the Meal Mart prisoner kosher food, filed on 12/1/2010, Civil Action Number 1:10-cv-12085-RGS

99. At the time Plaintiff filed the 12/1/2010 federal lawsuit, a trusted Orthodox Jewish friend of Plaintiff advised Plaintiff not to sue the Meal Mart Defendants over the kosher food issues, and Plaintiff respected that advice and followed it.

100. Plaintiff had hoped to resolve the kosher food issues without involving the Meal Mart Defendants, but before Plaintiff was allowed to mediate the issues with the DOC defendants, The Honorable Judge Richard G. Stearns, Defendant, dismissed Plaintiff's case 1:10-cv-12085-RGS.

101. Quite a few times since Plaintiff's filing of 10-cv-12085-RGS on 12/1/2010, Defendant Joan T. Kennedy has produced a document stating she has not conferred with Plaintiff for the reason that to do so would be unduly burdensome and would likely serve no purpose and that Local Rule 18.2 specifically exempts her from conferring with Plaintiff.

102. On dates between 2/28/2012 and 3/06/2012, six inmates from SBCC filed motions to intervene as plaintiffs in the action 10 cv-12085-RGS, claiming to have the same issues as Plaintiff.

103. On 3/05/2012, Defendant Joan T. Kennedy suddenly made an unannounced visit to Plaintiff's prison block at SBCC because now she suddenly believed that conferring with Plaintiff was

going to serve a purpose for her and not be overly burdensome,
at least, not too overly burdensome to stop her from conferring.

104. On 3/06/2012 Judge Stearns, Defendant, suddenly dismissed
Plaintiff's civil RLUIPA lawsuit as if Plaintiff had reached a
settlement agreement of some kind.

105. The only thing Plaintiff had agreed to do when conferring
with Defendant Kennedy was to file an Inmate Religious Services
Request Form, as Plaintiff had filed suit complaining that he was
being denied processing of his previously submitted Inmate Religious
Services Request Forms.

106. Agreement to file an Inmate Religious Services Request
Form does not constitute a settlement agreement.

107. Judge Stearns does not have any document signed by Plaintiff
indicating any settlement agreement.

108. Judge Stearns had no lawful reason to dismiss Plaintiff's
lawsuit and acted outside his judgeship when gratuitously dismissing
Plaintiff's lawsuit.

109. Plaintiff filed repeated documents to the Honorable Judge
Stearns' Courtroom vehemently denying the existence of any agreement
to settle the case.

110. In the face of Plaintiff's ongoing written insistence
that there is no agreement, Judge Stearns insisted there was some
settlement agreement. Docket Number 88 indicates "if the parties'
agreement is not consumated"; Docket Number 92 says: "his agreement..."
Docket Number 89 says: "if the parties' agreement is not executed."
Judge Stearns' 5/08/2012 ORDER says: "The remaining counts were
dismissed pursuant to the parties' agreement."

111. Plaintiff already had a due process right to the Religious Services Review Committee as a separate process from his complaint which Judge Stearns dismissed due to an alleged agreement.

112. Judge Stearns pretended that Plaintiff had waived all of his rights in an agreement, including the right to review of a disciplinary report wherein Plaintiff had turned up poisoned by Salmonella food poisoning while on a putative kosher diet, and where the ticket resulted in Plaintiff being shipped to SBCC.

113. Judge Stearns dismissed Plaintiff's case before allowing Plaintiff a ruling on some important motions including motion for summary judgment, opposition to defendants' motion for summary judgment, and motion to certify class.

114. Judge Stearns denied Plaintiff's motion for reconsideration saying, "LeBaron acknowledges that Ms. Kennedy visited him in person and does not deny that he agreed to file another request to the Religious Review Services Review Committee," and said Plaintiff can file an appeal or file a new lawsuit, which Plaintiff has done.

115. On information or belief, Defendant Kennedy used words to deceive Judge Stearns into believing there was a settlement reached or Judge Stearns has acted unreasonably and illegally, or both, or there was a conspiracy to deprive Plaintiff and others similarly situated who moved to be added as plaintiffs of due process.

116. Plaintiff files this suit against The Honorable Judge Richard G. Stearns pursuant to Pulliam v. Allen, 466 U.S. 522 (1984) for declaratory relief asking the Court to give an opinion as to the constitutionality of certain practices and rulings and decisions of Judge Stearns.

117. The Honorable Judge Stearns suggested mediation twice over two years, but Plaintiff was never allowed to mediate.

118. By dismissal of Plaintiff's case, Judge Stearns has foreclosed Plaintiff's ability to get out of SBCC Maximum security prison due to the disciplinary tickets which Judge Stearns failed to review by by certiorari as a part of Plaintiff's complaint.

119. Plaintiff has been subjected to repeated discriminations and retaliations at SBCC via false disciplinary tickets seven of which have been dismissed after Plaintiff was already punished.

120. Plaintiff has spent many months on the punishment block for the false tickets, including tickets for threatening to sue, as a result of being housed at SBCC, and Commissioner Spencer has refused to move Plaintiff back to the medium security level.

121. There are many ongoing issues with the kosher food abuses, no kosher menu on the block at all. The most salient issue is omission of food items and substitutoin with non-kosher food, such as a small half ounce plop of non-kosher yogurt instead of a whole cup of kosher yogurt, simply plopped in a tray.

122. The abuses of kosher food include trays of Meal Mart products which are not properly cooked. The array of kosher food violations are overwhelming, ongoing, and are being done with specific intent to retaliate against Plaintiff for bringing these kosher violations issues to court in a federal lawsuit.

123. The statements, acts, and omissions of Commissioner Luis S. Spencer's agents, employees, and Meal Mart Defendants who have acted under his implicit and explicit instructions and approval  as also RSKC decisions during the pertinent periods herein bind Commissioner Spencer under the doctrines of agency, joint conduct, master-servant, responeat superior, and conspiracy.

-17-

124. Plaintiff's typewriter has been broken during the many
times he has been moved to the disciplinary block on false
retaliatory tickets, and no amount of complaining had resulted
in getting it repaired or replaced.

125. When Plaintiff has filed grievances, very many of his
grievances have not been processed, and there are many others
at SBCC who have experienced this same problem at SBCC.

126. The ongoing retaliations included accusations against
Plaintiff by correctional officers saying Plaintiff was in prison
for some extremely heinous crimes which Plaintiff has never committed
in attempt to get Plaintiff jumped.

127. Plaintiff has written to Commissioner Spencer repeatedly
regarding the retaliations and hardships he was subjected to
both at MCI Norfolk and at SBCC, and Plaintiff's family has repeatedly
called Commissioner Spencer's office when Plaintiff was being
set up, but Mr. Spencer refused to intervene to correct the ongoing
retaliatory problems.

128. Mr. Spencer's actions and omissions above stated, including
the kosher food issues going uncorrected for years, have caused
Plaintiff humiliation, fear, emotional distress, horror, grief,
and loss of reputation.

CLAIMS FOR RELIEF

COUNT ONE

VIOLATIONS OF THE FIRST AMENDMENT AND RLUIPA

129. Plaintiff hereby incorporates by reference each and
every allegation made in the preceding paragraphs 1-128 as if
fully set forth herein.

-18-